George **AUBREY**, Appellant

v.

Donald **SANDERS**, M.D., Center for Clinical Research, Inc., Robert Gale Martin, M.D.; Carolina Eye Associates, P.C., Appellees.

No. 08–4351.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit L.A.R. 34.1(a), Sept. 15, 2009.

Opinion Filed: Sept. 24, 2009.

T. Morris, Esq., The Cook Law Group, Pittsburgh, PA, for Appellant.

Andrew B. David, Esq., Hal J. Wood, Esq., Horwood, Marcus & Berk, Chicago, IL, James A. Mcgovern, I, Esq., Marshall, Dennehey, Warner, Coleman & Goggin, John D. Eddy, Esq., Eddy, Deluca, Gravina & Townsend, Pittsburgh, PA, Evelyn M. Savage, James R. Van Camp, Van Camp, Meacham & Newman, Pinehurst, NC, for Appellees.

Before: SLOVITER, FUENTES, and SMITH, Circuit Judges.

## OPINION OF THE COURT

FUENTES, Circuit Judge:

Appellant George Aubrey appeals the District Court's Order granting Appellees' motions for summary judgment on his claim charging Donald Sanders, M.D. ("Sanders"), Center for Clinical Research, Inc., ("CCR"), Robert Gale Martin, M.D., ("Martin"), and Carolina Eye Associates, P.C. ("CEA," collectively "Defendants") with common law fraud and civil conspiracy under Pennsylvania law.[1] Aubrey contends that Defendants concealed and misrepresented damming research in connection with their assistance to Sunrise Technologies International, Inc., ("Sunrise") in obtaining approval from the Food and Drug Administration ("FDA") for an ophthalmologic laser, thereby fraudulently luring him to invest in Sunrise. The District Court granted Defendants' summary judgment motions. For the following reasons, we affirm the District Court's judgment.

## I.

The District Court had jurisdiction over this case pursuant to 28 U.S.C. § 1332(a) and we have jurisdiction to hear this appeal under 28 U.S.C. § 1291. We exercise plenary review over a district court's grant of summary judgment, applying the same standard of review that the district court should have applied. *See MBIA Ins. Corp. v. Royal Indem. Co.*, 426 F.3d 204, 209 (3d Cir.2005). A court may grant summary judgment when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

## II.

Because we write primarily for the parties, we discuss the facts only to the extent necessary for resolution of the issues on appeal.

Appellee Sanders is a physician and is the President of appellee CCR. Sunrise hired Sanders and CCR as consultants to assist it with the process of obtaining approval from the FDA for a laser used to cure farsightedness. Sanders and CCR arranged clinical trials to test the efficacy of the laser. He also assisted Sunrise in presenting the data from the trials to the FDA's Opthalmologic Device Panel. Appellee Martin was a physician and the President of appellee CEA. Sunrise hired Dr. Martin to conduct clinical trials on the laser. He conducted trials on 15 patients, accounting for less than the five percent

---

1. Dr. Martin died on March 18, 2008 and Aubrey never moved to substitute his Estate as a party.

of the studies presented to the FDA. In July 1999, the FDA initially disapproved of the laser, but subsequently approved the device six months later, after Sunrise modified its label to reflect the laser's temporary effectiveness at correcting far-sightedness. From 1999 through 2002, Aubrey invested in Sunrise on the advice of various stockbrokers. According to Aubrey, the failure of the laser to effectively correct farsightedness resulted in a devaluation of his investment in Sunrise.

He commenced this action in Pennsylvania's Court of Common Pleas, under Pennsylvania's common law proscribing fraud, accusing Defendants of making material misrepresentations and omissions in connection with the laser's efficacy, which fraudulently induced him into purchasing Sunrise stock. Specifically, he charged that Sanders manipulated the results of the clinical trials and made misleading statements regarding the laser in articles and press releases. Aubrey accused Martin of misrepresenting the results of the clinical trials and the potential for FDA approval to induce individuals to purchase stock in Sunrise. Defendants removed the action to federal court and after discovery, the parties filed motions for summary judgment. The District Court granted Defendants' Rule 56 motion, ruling as a matter of law that: (1) Aubrey failed to prove the elements of fraudulent misrepresentation and civil conspiracy; (2) in the absence of direct reliance, Aubrey could not rely on the "fraud on the market" theory of liability; (3) the Food, Drug, and Cosmetic Act preempted any claim based upon a "fraud on the FDA" theory of liability; and (4) because Aubrey violated Local Rule 56.1, Defendants' statements of material facts were deemed admitted.

### III.

On appeal, Aubrey argues that the District Court erred, in relevant part, because it incorrectly ruled that he could not premise his claims upon a "fraud on the market" theory of liability.[2] Under Pennsylvania's common law, the elements of an intentional misrepresentation or fraud are:

(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

*Gibbs v. Ernst*, 538 Pa. 193, 647 A.2d 882, 889 (1994). Under the fraud on the market theory, a plaintiff states a *prima facie* case if "[m]isleading statements w[ould] . . . defraud purchasers of stock even if the purchasers [did] not directly rely on the misstatements" because the misstatements "may [have affected] the price of the stock, and thus defraud[ed] purchasers who rely on the price as an indication of the stock's value." *Peil v. Speiser*, 806 F.2d 1154, 1160–61 (3d Cir.1986). In *Peil*, however, we expressly rejected an argument similar to the reasoning now advanced by Aubrey, refusing to extend and apply a fraud on the market theory of liability to a common law fraud claim. 806 F.2d at 1163 n. 17.

**2.** Appellees contend that Aubrey waived this issue because he did not advance this theory of liability in his moving papers before the District Court. Having failed in meeting his burden regarding direct reliance, Appellees contend that Aubrey should not be permitted to raise a new theory of liability on appeal. While Aubrey did not explicitly state his claim under a "fraud on the market" theory of liability, Appellees and the District Court construed Aubrey's claim as raising this issue because Appellees devoted significant portions of their briefs to discounting this theory and the District Court rejected this theory in its Opinion. (App.226–27, 212–13). Therefore, we will consider the merits of this argument.

("While fraud on the market theory is good law with respect to the Securities Act, no state courts have adopted the theory, and thus direct reliance remains a requirement of a common law securities fraud claim.").[3]

Aubrey urges us to revisit this precedent in light of the Supreme Court's decision in *Basic Inc. v. Levinson*, 485 U.S. 224, 248–49, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988), wherein the Court endorsed the fraud on the market theory in a securities fraud case premised on a violation of section 10(b) of the Securities Exchange Act of 1934. This decision led some district courts in this Circuit to predict that Pennsylvania courts would adopt a fraud on the market theory for common law securities claims. *See e.g., In re Healthcare Servs. Group, Inc. v. Sec. Litig.*, 1993 WL 54437, at *6 (March 1, 1993 E.D.Pa.) (questioning the validity of the *Peil* footnote in light of the *Basic* decision); *In re Atlantic Fin. Fed. Sec. Litig.*, 1990 WL 171191, at **2–3 (Oct. 31, 1990 E.D.Pa.) (opining that the Third Circuit would decide *Peil* differently post-*Basic* ).

We agree with the District Court that those decisions are unpersuasive. First, as noted by the District Court, the Supreme Court in *Basic* distinguished common law fraud from federal securities fraud claims. 485 U.S. at 244 n. 22, 108 S.Ct. 978. In *Basic*, the Court observed that "[a]ctions under Rule 10b–5 are distinct from common-law deceit and misrepresentation claims, and are in part designed to add to the protections provided [to] investors by the common law." *Id.* (internal citations omitted). Second, despite the predictions advanced in the decisions cited by Aubrey, in the more than twenty intervening years since *Basic*, Pennsylvania has not recognized a fraud

on the market theory of liability in common law fraud claims. Finally, the cases cited to by Aubrey are readily distinguishable because unlike the plaintiffs in those cases, Aubrey did not sue Sunrise, the company in which he invested, or its officers or directors.

We have considered the remainder of Appellant's claims and find that they are without merit and therefore do not require further discussion.

### IV.

For the foregoing reasons, we affirm the judgment of the District Court. Appellees' request for Fed. R.App. P. 38 damages is, however, denied. In light of the record, we cannot conclude that Aubrey's appeal was frivolous. Furthermore, Appellees failed to file a separate motion seeking damages as required by Rule 38.

---

**3.** Aubrey does not challenge the District Court's ruling that he failed to identify any alleged misstatements or omissions by Defendants upon which he directly relied in deciding to purchase Sunrise stock.